IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

KENNETH N. CAIN,                              §
Institutional ID No. 01461710,               §
SID No. 06352412,                            §
Previous TDCJ ID No. 01074522,               §
                                             §
                    Plaintiff,               §
                                             §
v.                                           §    CIVIL ACTION NO. 5:20-CV-131-BQ
                                             §
TEXAS TECH HEALTH SCIENCES                   §
CENTER, *et al.*,                            §
                                             §
                    Defendants.              §

**REPORT AND RECOMMENDATION**

Proceeding pro se and *in forma pauperis* (IFP), Plaintiff Kenneth Cain filed this action

under 42 U.S.C. § 1983, claiming violations of his constitutional rights while incarcerated in the

Texas Department of Criminal Justice (TDCJ) John Montford Unit (Montford Unit). *See* Compl.

3–4, ECF No. 1.[1] He seeks a preliminary injunction and monetary damages. *Id.* at 4.

Cain filed his Complaint on June 17, 2020. ECF No. 1. That same day, Cain filed

"Supplemental Pleadings and Supplemental Complaint," which expound on his original

Complaint. ECF No. 3.[2] The district judge then transferred this case to the undersigned United

States Magistrate Judge for further proceedings. ECF No. 22. The undersigned thereafter

reviewed Cain's pleadings and ordered Cain to complete a questionnaire pursuant to *Watson v.*

---

[1] Citations to Cain's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[2] Cain has also filed numerous frivolous or irrelevant pleadings, which the Court has either dismissed or unfiled. *See* ECF Nos. 14, 15, 21, 26, 27, 30, 35, 44, 46. After three warnings, the Court imposed monetary sanctions against Cain for his frivolous filings. ECF No. 35.

*Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he failed to timely complete and return. ECF No. 36.

On April 19, 2021, the undersigned recommended dismissal without prejudice of Cain's Complaint for want of prosecution. ECF No. 38. On May 13, 2021, however, Cain filed a response to the Court's questionnaire and the United States District Judge re-transferred this case to the docket of the magistrate judge. ECF No. 42. The undersigned thereafter issued a supplemental questionnaire, which Cain completed and returned.[3] ECF Nos. 47, 53.

Cain has not consented to proceed before the undersigned magistrate judge. ECF No. 31. After considering the allegations in Cain's pleadings, his questionnaire responses, and applicable law, the Court concludes that Cain's claims in this action must be dismissed for failure to state a claim in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal

---

[3] Cain's supplemental questionnaire response was due July 29, 2021. ECF No. 47. On August 6, Cain requested an extension of time to respond, which the undersigned granted, providing a new due date of August 27, 2021. ECF Nos. 50, 51. Cain returned his supplemental questionnaire responses on October 27, 2021. ECF No. 53.

theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A. Cain's Allegations

Cain alleges disparate claims against six Defendants: (1) Texas Tech University Health Sciences Center (TTUHSC); (2) Mental Health Nurse Practitioner (MHNP) Stow; (3) Mrs. Bencion; (4) the Montford Unit Medical Coordinator; (5) the Mental Health Coordinator; and (6) an unidentified nurse (Nurse Doe) (collectively, Defendants). Compl. 1, 3–4; Questionnaire

3

1–2, ECF No. 40. Cain states that "at all times did the defendants act in their individual/official capacities." Suppl. Compl. 1, ECF No. 3 (cleaned up).

According to Cain's pleadings, "Defendants work at the . . . Montford Unit and for" TTUHSC, but he further avers that "at all times relevant to this action [Cain] was confined in the [TDCJ] and at the Bill Clements Unit in Amarillo, Texas." *Id.* Because of this apparent contradiction—that at all times relevant to his claims Defendants exclusively worked at the Montford Unit while Cain was assigned to the Bill Clements Unit—the Court asked Cain to clarify where the actions giving rise to his Complaint occurred. *See* Questionnaire 1. Cain did not answer the question. *Id.* Nevertheless, the Court assumes, for the purpose its analysis, that Cain intends to plead that each action attributed to the Defendants occurred while Cain was incarcerated at the Montfort Unit.

Cain claims initially that Defendant Stow was deliberately indifferent to his serious medical needs in multiple ways. First, Cain states Defendant Stow was "hostile" towards Cain, causing the two to dislike one another and lowering the quality of care Cain received. Suppl. Compl. 3. Second, Cain alleges that Defendant Stow did not "want" to provide proper medical care and did not examine Cain during his requested appointments. *Id.* Third, Cain avers that Defendant Stow discontinued "all but one (1) of [Cain's] mental medications," leaving only a medication that "does not work for [Cain's] disorder." *Id.* Cain attributes this to Stow's purported belief that Cain's "13-yr [sic] old disorders were not mental they were behavior[al] and no medication is needed." *Id.* (emphasis omitted).[4] As a result, Cain states in his fourth allegation that he "was unable to control such disorder" and became a "disciplinary problem" for which he

---

[4] Nowhere in his Complaint or questionnaire responses does Cain provide a list of the names or symptoms of his alleged mental disorder(s).

was discharged from "the program."[5]  *Id.*  However, Cain also states in his fifth allegation that Defendant Stow discontinued medications at the request of prison staff "or RN or LVN." Questionnaire 1.  Sixth, Cain alleges Defendant Stow "helped take [Cain] off Mrs. Salgado's caseload"—an individual identified by Cain as "the only one . . . who knew how to treat [him] and cared enough and knew enough about [his] mental health records to treat" him.  *Id.*; Suppl. Compl. 4.

Against Defendant Bencion, Cain claims deliberate indifference to his serious medical needs arising from similar scenarios.  Cain never explains what role Defendant Bencion served at TDCJ, but nevertheless alleges that she exhibited a hostile attitude, refused to treat him or did not know how to treat him, discharged him from the program at the request of prison staff, and removed him from Mrs. Salgado's caseload.  Questionnaire 2.  He alleges Defendant Bencion told him "on each visit" that she was "not . . . sure how to treat [Cain]."  *Id.*  Without explaining how, Cain alleges that Defendants Stow and Bencion's decision to remove Cain from Ms. Salgado's caseload "caused [his] illnesses to worsen."  Suppl. Compl. 4.

Against Nurse Doe, Cain alleges she "treated [Cain] and was not qualified to issue such needed medical supplies as noted in file in 2015 by" a nurse practitioner.  Compl. 4.  Specifically, Cain avers that in 2015, a nurse practitioner "stated that [Cain's] lumbar and thorax area of [his]

---

[5] When asked what he meant by "the program," Cain answered the "Mental Health Impulse Program," which he describes as a "program designed to treat mental health issues with treatment and medications."  Questionnaire 6. Authenticated records received from TDCJ include a policy manual instead describing a "Mental Health Therapeutic Diversion Program (MHTDP)."  It is not clear from Cain's questionnaire responses that this is the same program, but the authenticated records include numerous references to the MHTDP, including in response to Cain's medical grievances.  To be eligible for the MHTDP, prisoners must have a mental health diagnosis, be confined to Restrictive Housing, have more than one year left on their sentence, and cannot have "significant medical issues or an acute psychotic disorder requiring a higher level of mental health care."  The policy manual states the goal of the program is "assisting [offenders] to achieve their optimal level of functioning . . . and to successfully transition into less restrictive housing."  The manual further cautions that "[s]erious rule violations and program non-compliance may result in removal from the program or phase demotion as decided by the treatment team," and that "[o]ffenders who do not wish to participate in the program or are not benefitting from the program will be discharged."

back were cracked [and] also that [his] left hand needed a brace but metal splints [are] 'not' allowed." Suppl. Compl. 2. Then, at an appointment in June 2020 at the Montford Unit, Nurse Doe informed Cain that no lumbar supports were available, though Cain alleges he could see "a cabinet titled 'lumbar supports' next to her desk." Questionnaire 2. Cain does not allege that he made requests for lumbar supports to any other medical staff between 2015 and his June 2020 appointment with Nurse Doe. *See id.*; Suppl. Compl. 2.

Cain brings claims against TTUHSC only as employer of the individual Defendants. Questionnaire 2. According to Cain, TTUHSC provides inadequate—both in number and in training—mental health staff to address the Montford Unit's mental health program's needs. Compl. 6. As a result, Cain contends employees "refuse treatment to some patient(s)" whom "their employees deem undesirable to treat." *Id.* Cain specifies that "the state . . . provid[es] a physician who does not meet [the] minimum standards of competence or diligence or who cannot give adequate care because of an excessive caseload or inadequate facilities," which Cain believes constitutes "a breach of the state's constitutional duty." *Id.* at 7. Cain further alleges that TTUHSC assigned to him as caregivers "those with hostile attitudes towards their patients," which triggered "conflict between the care giver and the patient" and, in his case, resulted in "removal of medications," which in turn caused Cain to become a "disciplinary problem" and ultimately discharged from the program. Questionnaire 2. Cain contends that due to the inadequacy of its program, TTUHSC provides "proforma treatment . . . which is not adequate care under the Eighth Amendment." *Id.* (cleaned up).

Cain names both the "Montford Medical Coordinator" and the "Mental Health Coordinator" separately, though often refers to both together and interchangeably. Compl. 3; Questionnaire 10–11; *see* Suppl. Compl. 4 ("Notified by I-60 and sick call many times no reply

from both."). Cain names the Coordinators in their supervisory capacities, alleging that both "disposed of medical sick calls" and "failed to ensure" Defendants provided adequate medical care, which resulted in "neglegant [sic] health care." Questionnaire 10–11; Compl. 3. Cain offers "the lack of . . . answer" as evidence that the Coordinators "disposed" of his calls. Questionnaire 10–11. Despite multiple inquiries from the Court, Cain provides no other facts to support or amplify these claims. *See id.*; Suppl. Questionnaire 6–7, ECF No. 53.

For several of his allegations, Cain does not identify an actor, instead referring to the alleged wrongdoer as "they" or "unknown." Cain alleges one or more unidentified persons failed to treat his oral lesions and failed to "cure" the unidentified cause of his weight loss and bloating. Compl. 16 (oral lesions); Suppl. Compl. 2 (weight loss and bloating); Questionnaire 17–18 (oral lesions). Rather than attributing these facts to a named Defendant, Cain requests "discovery" to identify the alleged responsible party. *See, e.g.*, Compl. 7; Questionnaire 14.

As relief, Cain requests a preliminary injunction "for proper medical care" and $60,000 in damages. Compl. 4.

**B. Defendants Immune from, or Otherwise Not Amenable to, Suit**

Cain seeks monetary damages and injunctive relief. *Id.* A suit against Defendants in their official capacities is simply another way of stating a claim against TDCJ or Texas Tech University, and therefore the State of Texas. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State."). It is well established that suits for monetary damages against state officials in their official capacities are barred both by state sovereign immunity and the Eleventh Amendment, and therefore cannot succeed under § 1983. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that

claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities); *see also United States v. Tex. Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions."); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) ("As an instrumentality of the state, the TDCJ[] is immune from a suit for money damages under the Eleventh Amendment."). Thus, any claim for monetary damages against Defendants in their official capacities should be dismissed.[6]

Furthermore, Cain may not seek any relief from TTUHSC, whether monetary or injunctive. Cain sues TTUHSC as the unit responsible for his medical care while housed in the Montford Unit. *See* Questionnaire 1 ("Texas Tech University Health Science [sic] Center:  The sub contracted employee [sic] of all the [other] defendants . . . through June of 2020."). TTUHSC is not a jural entity distinct from either TDCJ or Texas Tech University and it has no capacity to be sued under § 1983. *Aguiar v. Whiteley*, No. SA15CV14DAE (HWB), 2016 WL 502199, at *1–2 (W.D. Tex. Feb. 8, 2016) ("Neither the Robert B. Green Clinic, University Hospital, nor Correctional Health Care Services are separate jural entities capable of suing or being sued independently of the Hospital District."); *cf. Howe v. Polunsky Unit*, No. 9:08CV142, 2010 WL 5640804, at *9 (E.D. Tex. Nov. 30, 2010) ("[T]o the extent that the Polunsky Unit remains a named defendant in the case, the Defendants correctly state that the prison unit has no legal existence apart from TDCJ and thus cannot be sued in its own name."), *R. & R. adopted by* 2011 WL 245566 (E.D. Tex. Jan. 22, 2011). Thus, each of Cain's claims for relief against TTUHSC should be dismissed.

---

[6] An additional basis for dismissal of these claims is that neither a state nor its officials acting in their official capacities are "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

## C. Deliberate Indifference to Serious Medical Needs

The Court liberally construes Cain's pleadings as alleging that Defendants Stow, Bencion, and Nurse Doe were deliberately indifferent to his medical needs through inadequate, denied, or delayed care. The Constitution requires that prison officials provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks and citation omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only where he (1) "knows [the] inmate[] face[s] a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting

*Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

1. **Defendant Stow**

   a. **Cain's allegation that Defendant Stow presented a "hostile attitude" and did not "want" to treat Cain fails to state a cognizable constitutional claim.**

Cain alleges that Defendant Stow expressed a "hostile attitude towards [Cain]," which in turn caused the two "to dislike each other" and, according to Cain, demonstrated that Defendant Stow "didn't want to issue proper care" to him. Suppl. Compl. 3; Questionnaire 1. Cain seeks to

bring a standalone "hostile attitude" claim against Defendant Stow. Questionnaire 1; Suppl. Questionnaire 1.

A hostile or antagonistic attitude from a medical provider does not constitute deliberate indifference to serious medical needs. *Douglas v. McCarty*, 87 F. App'x 299, 301 (4th Cir. 2003) (per curiam) ("To the extent that [prisoner's] claims against [prison nurse] allege inadequate medical care, he fails to state a constitutional violation. In particular, [prisoner's] allegations that [a nurse] . . . exhibited a hostile attitude toward him [does] not demonstrate the requisite deliberate indifference to a serious medical need to state a cognizable Eighth Amendment claim for denial of medical care."). Cain's claim stemming from Defendant Stow's allegedly "hostile attitude" should be dismissed. *See id.*

> **b. Cain's claim that Defendant Stow discontinued medications following medical evaluation and diagnosis fails to demonstrate deliberate indifference to serious medical needs.**

Cain alleges Defendant Stow "discontinued all mental health medications"[7] that Cain has received for over a decade, after Defendant Stow—a mental health nurse practitioner—determined Cain's illnesses were "behavioral" rather than "mental," and that "no medication [was] needed" to treat Cain's illnesses. Compl. 3; Suppl. Compl. 3. In essence, Cain disagrees with Defendant Stow's medical diagnosis and subsequent determination that Cain's pre-existing prescriptions were no longer the best treatment. Suppl. Compl. 3.

An inmate's disagreement with medical treatment does not provide the basis for a viable constitutional claim. *Norton*, 122 F.3d at 292; *Evans v. Santos*, No. 4:15-CV-72-DMB-JMV, 2017 WL 590301, at *8 (N.D. Miss. Feb. 14, 2017) (dismissing at summary judgment plaintiff's claim

---

[7] Despite Cain's initial allegation that Defendant Stow stopped "all" his medications, Cain states in his Supplemental Complaint that Defendant Stow "took all but one (1) of [Cain's] mental medications and that one (1) does not work for [Cain's] disorder and [Cain] told [Stow] that on the very few times [Stow] saw [Cain]." Suppl. Compl. 3.

11

that defendants acted with deliberate indifference in discontinuing his prescription, which resulted in plaintiff's hospitalization, because "substituting [plaintiff's] hindsight opinion of what treatment he should have received in place of the medical judgments rendered by professionals at the time he received medical care" does not demonstrate deliberate indifference). Specifically, "[m]ere failure to correctly diagnose a prisoner is not enough to meet the high standard of deliberate indifference." *Walcott v. Terrebonne Par. Jail Med. Dep't*, No. 16-15594, 2017 WL 2992058, at *3 (E.D. La. July 14, 2017). Under the foregoing facts, Cain has not demonstrated that Defendant Stow "intentionally failed to treat him or ignored his complaints," and therefore cannot establish an Eighth Amendment violation. *Id.* (internal quotation marks omitted).

"Even assuming [Defendant Stow] should have prescribed a different medication, such conduct, at most, constitutes negligence which does not amount to deliberate indifference." *Shelby v. Woodall*, No. 1:13CV504-KS-MTP, 2014 WL 7272986, at *6 (S.D. Miss. Dec. 18, 2014) (dismissing plaintiff's claim that defendant's discontinuance of plaintiff's preferred medication violated plaintiff's constitutional rights). For these reasons, Cain's claim arising from Defendant Stow's diagnosis and discontinuance of Cain's mental health medications should be dismissed.

### c. Cain has failed to allege facts demonstrating that Defendant Stow discharged him from the mental health program or stopped his medications due to a request from prison staff.

In his original questionnaire responses, Cain alleges that Defendant Stow "discharged [Cain] from the mental health program due to a request from prison staff," and that Stow discontinued Cain's medication "because shift RN or LVN asked him to." Questionnaire 1 (cleaned up), 5. Cain provides no facts to support either claim, *e.g.*, he does not describe any conversation between Defendant Stow and the unnamed RN or LVN, or why the RN or LVN

12

purportedly wanted Cain's medications discontinued. *See id.* at 5.[8]  Instead, Cain states that "discovery will show" facts to support his claims. *Id.*

Moreover, Cain's allegation that Defendant Stow stopped Cain's medications at the request of prison staff directly contradicts Cain's initial claim that Defendant Stow did so as a result of an allegedly incorrect diagnosis. And, examining his claim more closely, the staff members who Cain now alleges convinced Stow to discontinue the medications are in fact nursing personnel. *Id.* Even construing his pleadings liberally, Cain essentially contends that medical staff changed or stopped his medication, either unilaterally or after consulting one another, in an effort to treat his medical conditions. Such an allegation does not rise to the level of a constitutional violation—especially in light of Cain's contradicting statements. *See Terrell v. Mertz*, No. 1:14CV325-JCG, 2015 WL 5475219, at *3 (S.D. Miss. Sept. 17, 2015) ("Prison medical providers are entitled to exercise their professional medical judgment in deciding what treatment is adequate for a serious medical need of a prisoner, and the decision to provide additional treatment is a classic example of a matter for medical judgment." (internal quotation marks omitted)).

Similarly, Cain's claim that Defendant Stow discharged him from the mental health program at the request of prison staff does not constitute deliberate indifference to serious medical needs. Questionnaire 1. Cain once again does not provide facts to support this claim, and in fact contradicts it elsewhere in his pleadings.[9] *Id.* at 6–7. In his Supplemental Complaint, Cain avers that after discontinuing Cain's "iratible [sic] depression medication, " Stow discharged Cain from the program "for becoming a disciplinary problem." Suppl. Compl. 3. According to Cain, he only

---

[8] When asked for specific facts to support his claim that Defendant Stow discontinued his medications at the request of prison staff, Cain wrote the phrase "in medical file" and left the remaining page of follow-up questions blank. Suppl. Questionnaire 2–3.

[9] In addition to the contradictory allegations already provided, Cain states in an identical claim against Defendant Bencion that Defendants discharged him "do [sic] to [his] no contact order," which meant Cain "could not stay" in the program. Suppl. Questionnaire 5.

became a disciplinary problem "due to a lack of medication," which made Cain "unable to control [his] disorder." *Id.* (cleaned up). Cain would have the Court draw a connection from Defendant Stow's alleged hostile attitude, to his medical decision to discontinue Cain's medications, to the worsening of Cain's symptoms, to his discharge from a mental health program, as evidence of a constitutional violation. *See id.*[10] For reasons already explained, Cain's contention is too tenuous, and unsupported both factually and legally, to state a viable constitutional claim.

Cain avers that he was housed in both the Montford Unit and the Clements Unit "at all times relevant to this action," but does not specify which prison contained the mental health program from which he was apparently discharged. *Id.* at 1. Because he avers that Defendant Stow works in the Montford Unit, the Court understands Cain to direct his claims at the Montford Unit's mental health program. *Id.* at 3. Cain, however, states that he received his medications for over a decade prior to their discontinuance—necessarily including time he was not housed in the Montford Unit or subject to its programs—thereby demonstrating that Cain's participation in the mental health program was not a prerequisite to receiving care he believes was adequate to address his medical needs. *See* Questionnaire 4–5. Under these facts, Cain cannot establish that discharge from the mental health program would constitute deliberate indifference to his serious medical needs. "By its very nature, incarceration deprives a prisoner of the wide choice of health care providers available and may well interfere with a prisoner's preferred mode of treatment." *Terrell*, 2015 WL 5475219, at \*3. Even if Cain could establish that the mental health program was the best method for treating his conditions, Cain "do[es] not have a constitutional right to the best

---

[10] Cain does not explain how Defendant Stow's actions resulted in specific behaviors traceable to Cain's unspecified disorders. *See* Suppl. Compl. 3. Even if Cain could establish that the discontinued medication was wrongful, his failure to also specify what behaviors he exhibited that caused him to "becom[e] a disciplinary problem" precludes a finding that Cain's lack of medication directly led to his behavioral problems. Moreover, Cain appears to simultaneously imply the discharge was proper (because he was a disciplinary problem) and wrongful (because Defendants refused to treat his mental health disorders), further undermining his attempt to establish a constitutional violation. *See id.*

medical treatment available," and such a claim cannot meet the "extremely high standard of deliberate indifference." *Id.* (internal quotation marks omitted).

> **d.  Cain's allegation that Defendant Stow removed him from Mrs. Salgado's caseload fails to state an actionable constitutional claim.**

Cain alleges that Defendant Stow removed him from the case load of a caregiver named Mrs. Salgado, who "was the only one who knew how to treat [Cain]," and instead assigned Cain to Defendant Bencion, who allegedly did not know how to treat him. Questionnaire 2 (cleaned up), 6. Cain again refuses to provide supporting facts, instead insisting that discovery "shall show" that his conclusory allegations have factual support. *Id.* at 6.

Cain "is not entitled to treatment by medical providers of his choice." *Crowl v. Vannoy*, No. CV 16-413-SDD-RLB, 2017 WL 3634185, at *5 (M.D. La. Aug. 1, 2017), *R. & R. adopted by* 2017 WL 3633442 (M.D. La. Aug. 23, 2017). Moreover, Cain's dissatisfaction with the treatment he has received from providers other than Mrs. Salgado merely constitutes, at best, an assertion of negligence, and does not give rise to a § 1983 claim of deliberate indifference. *Gobert*, 463 F.3d at 346. Thus, Cain's claim concerning removal from Mrs. Salgado's caseload should be dismissed as well.

> **2.  Defendant Bencion**

Cain never provides Defendant Bencion's role within TDCJ, but implies that she is a healthcare provider. *E.g.*, Suppl. Compl. 3. Cain brings several of the same claims against Defendant Bencion that he alleges against Defendant Stow. The shared claims include allegations that Defendant Bencion (1) exhibited a hostile attitude, (2) removed Cain from Mrs. Salgado's caseload, (3) caused Cain to become a "disciplinary problem," and (4) discharged Cain from the mental health program at the request of prison staff. *Id.*; Questionnaire 1–2, 7; Suppl. Questionnaire 5. The undersigned (1) recommends dismissal of these claims against Defendant

Bencion for the same reasons provided regarding the claims against Defendant Stow, and (2) analyzes in turn Cain's remaining claims against Defendant Bencion.

> **a. Cain's allegation that Defendant Bencion misdiagnosed or did not know how to treat his conditions does not constitute deliberate indifference**.

According to Cain, Defendant Bencion "mislabeled" him as an "impulsive cutter," even though Cain identifies as an "addictive cutter." Suppl. Compl. 4. Though Cain does not explain how this distinction impacted his medical care, he alleges this mislabeling "cause[d] [the] issue to worsen and cause[d] longterm mental and phyical [sic] damage to" Cain. Questionnaire 14.[11] As in his claims against Defendant Stow, Cain's allegation that Defendant Bencion misdiagnosed him or did not know how to treat him at most constitutes a claim of negligence or malpractice, not a constitutional violation, and should be dismissed. *Gobert*, 463 F.3d at 346; *Walcott*, 2017 WL 2992058, at *3.

> **b. Cain's claim that Defendant Bencion refused to treat him is directly contradicted by his other allegations.**

Cain alleges Defendant Bencion "did not wish to treat" him and refused to provide him with care. Compl. 3; Suppl. Compl. 3. Cain contradicts himself in his questionnaire responses, wherein he states both that Defendant Bencion "refused treatment flat no care" but also that "on each visit she stated Cain I'm not for sure how to treat you." Questionnaire 8; Suppl. Questionnaire 4. Thus, Cain contends that he received no care whatsoever, while also admitting that he had multiple visits with Defendant Bencion but that the care was inadequate, i.e., she expressed uncertainty how to treat him. The Court finds a meaningful distinction, for purposes of a deliberate indifference medical claim, between a practitioner simply refusing to see or treat a patient, and one

---

[11] In addition to Defendant Bencion, Cain attributes this harm to "[t]hose in medical file who diagnosed [Cain]," but again does not provide other identifying facts without "discovery."

who meets with the patient and based on her evaluation and/or examination has doubts about how best to proceed with treatment. "Although [Cain] did not feel that he received all of the medical procedures he hoped to obtain on his medical visit[s]," Cain fails to establish that Defendant Bencion "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Estrada v. Nehls*, 524 F. Supp. 3d 578, 597 (S.D. Tex. 2021) (quoting *Brewster*, 587 F.3d at 770) (dismissing claim that defendant only saw prisoner once and failed to examine him properly or provide adequate medical care). For these reasons, Cain's claim that Defendant Bencion refused to provide him medical care in violation of the Eighth Amendment should be dismissed.

### 3. Nurse Doe and Unknown Medical Personnel

#### a. Lumbar Supports

Cain alleges Nurse Doe failed to provide him lumbar supports as he requested, though Cain could see a cabinet labeled "lumbar supports" next to her desk. Questionnaire 2; *see* Suppl. Compl. 2. Cain does not state the medical basis for his supposed need for the supports or why Nurse Doe allegedly refused to provide them, and instead cities his desire for discovery to learn facts supporting this claim. Questionnaire 15. While Cain claims the deprivation "caused further damage to [his] spinal cord causing wanton infliction of pain" (*id.* at 16), he alleges no facts indicating the existence of medical orders requiring such supports, Nurse Doe's knowledge of those orders, and her conscious disregard of the orders. *See, e.g.*, Suppl. Compl. 2. Instead, he broadly alleges that he "was denied lumbar supports and was told there are no lumbar supports" available. *Id.* Even a liberal reading of Cain's pleading only yields a claim that Cain was seen by a medical provider and denied what he thought was appropriate treatment. Thus, Cain's Eighth

Amendment claim against Nurse Doe should be dismissed. *See Shelby*, 2014 WL 7272986, at \*6; *Terrell*, 2015 WL 5475219, at \*3.

### b. Oral Lesions and Gastrointestinal Issues

The Court liberally construes a grievance attached to Cain's Complaint as alleging deliberate indifference to his medical needs when an unnamed official refused to provide additional treatment for oral lesions. *See* Compl. 16. In the same grievance, Cain states the lesions are "infected and painful," and though they have "been treated . . . with antibiotics," the treatment does not "fix the pain when [Cain] eat[s]." *Id.* Once again, Cain states he received treatment but such treatment was inadequate, not that he received no care at all. Moreover, Cain does not tie any of the named Defendants to his oral-lesions claim. Questionnaire 17 (answering "all who seen me" when asked which defendant was responsible, but providing no names or descriptions).

Through his Supplemental Complaint Cain also claims gastrointestinal issues. Suppl. Compl. 2. He avers that he "has complained about weight loss, bloating and gas for three (3) years [but] no cure [has been] found," and that, regarding his weight loss, he has gained "small amounts . . . then lost quickly." *Id.* Cain alleges no facts showing that he requested care from any named Defendant regarding his gastrointestinal conditions or that Defendant(s) denied such care. *See id.*

Because Cain cannot demonstrate that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," his claims stemming from his oral lesions and gastrointestinal issues should be dismissed. *Estrada*, 524 F. Supp. 3d at 597.

### D. Cain's supervisory claims against the Mental Health Coordinator and the Medical Coordinator fail for lack of a constitutional violation.

Cain confirms that he brings his claims against the Mental Health Coordinator and the Montford Unit Medical Coordinator as employers of the other Defendants. *See* Questionnaire 2,

18

9–11. Liability of government officials for the unconstitutional conduct of their subordinates cannot rest solely upon a theory of *respondeat superior* or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) ("[S]upervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). A supervisory official may be held liable only if: (1) he personally participated in acts that violated the plaintiff's constitutional rights; (2) a sufficient causal connection exists between his wrongful conduct and the constitutional violation; or (3) he implemented an unconstitutional policy that directly resulted in injury to the plaintiff. *See Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). In addition, a supervisory official may be liable if the supervisor either failed to supervise or train the subordinate official. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

As discussed above, Cain has not stated a claim for deliberate indifference with respect to the actions of Defendants Stow, Bencion, and Nurse Doe. Without an underlying constitutional violation, Cain is unable to state a claim against Defendants for supervisory liability. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (holding plaintiff cannot state a claim for failure to train or supervise unless he establishes deliberate indifference); *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir. 1986) ("There is no supervisory liability without primary liability."). Thus, even where Cain claims that the supervisory officials "failed to ensure reasonable medical care," he does not state a cognizable constitutional violation and his claim should be dismissed. Compl. 3.

### E. Equitable Relief

Defendants are immune from monetary damages in their official capacities, and Cain has failed to allege constitutional violations against Defendants in their personal capacities. This leaves only Cain's request for a permanent injunction against Defendants in their official

capacities. Compl. 4. Because Cain has failed to establish any underlying constitutional violations, he cannot obtain equitable relief. *See Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (per curiam) ("As an injunction is a remedy that must be supported by an underlying cause of action, the failure of [appellant's] constitutional . . . claims also warrants dismissal of this claim."); *Pierce v. Kaufman Cnty. Dist. Att'y's Off.*, No. 3:16-CV-2554-G-BH, 2018 WL 5624195, at *7 (N.D. Tex. Sept. 27, 2018) ("Injunctive relief is potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." (internal quotation marks omitted)), *R. & R. adopted by* 2018 WL 5620548 (N.D. Tex. Oct. 29, 2018). Cain's request for injunctive relief against all Defendants should be dismissed.

### III.    Conclusion

For these reasons, the undersigned recommends that the United States District Judge **DISMISS WITHOUT PREJUDICE** for lack of subject matter jurisdiction Plaintiff Kenneth Cain's claims for monetary relief against all Defendants in their official capacities, and **DISMISS WITH PREJUDICE** Cain's remaining claims against all Defendants due to his failure to state a claim. Considering the foregoing, the undersigned also recommends that the district judge deny Cain's request for an attorney, which he included in his supplemental questionnaire responses. ECF No. 53.

### IV.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated: February ___, 2022.

 

**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**